Hear ye, hear ye. The appellate court in the second district is now open. Deanna Lopez is elected for presiding. Case number 2130660, the people of the state of Illinois, plaintiff, appellate, versus Richard Thomas, defendant, appellee. Arguing for the appellate, Thomas Mincer. Arguing for the appellee, Donald Renzel. Thank you. May it please the court, counsel. My name is Thomas Mincer on behalf of the people of the state of Illinois and the DuPage County State's Attorney's Office. Your Honor, seeing as though in this case the facts are not to dispute both parties, there are no questions that seek to delve right into the substantive portion of this case. This is a pure question of law, is it not? Yes, Judge. Does the good faith or bad faith of the state, is it relevant at all here? Your Honor, in regards to the good faith or bad faith of the state, it is relevant in regards to, specifically relevant in regards to, the prejudice of this subsequent charge on the defendant. And getting specifically into this, Your Honor, the way you've ruled, and even assuming at this juncture that compulsory joinder applies in regards to the subsequent offense the state was attempting to charge. Are you conceding that it applies? No, Judge. Just for continuity purposes, we'd start with the Williams rule. And I think it's indicated in the state's brief that the state also feels that one of the alternatives is that compulsory joinder does not apply. Essentially what the state has done in this brief is pose to the court three alternatives in this case as to why the trial court's decision was incorrect. One of the alternatives that this court could follow is that the Williams rule, as applied by the trial court in this case, was applied incorrectly. The Williams rule, as refined by Phipps and Woodrum, the Supreme Court cases, especially in light of that, the trial court improperly applied those cases. Specifically, in light of Phipps and Woodrum's, it's more so about not only the Hobson's choice this subsequent offense posed to the only defendant, but also the prejudice this subsequent offense posed. And in this case, not only is this subsequent offense not new and additional in light of the fact that it doesn't pose as Hobson's choice as contemplated by the Williams, but also that it doesn't prejudice the defendant in any way because this additional subsequent offense of A1 the state was attempting to charge places the defendant in no different position than he would have faced just in regards to the original A2 charge. But before we get into that, what about the threshold question about whether or not the charge was subject to compulsory joinder? Well, very well, Your Honor. Going into the compulsory joinder portion. First off, Van Schoik, people v. Van Schoik, is actually incredibly applicable to this factual situation. In people v. Van Schoik, the court says compulsory joinder analysis doesn't even apply in this circumstance. What circumstance? In the circumstance of a DUI that was filed as a misdemeanor, and subsequently the state, after blowing the speedy trial term in the misdemeanor case, attempted to file a felony DUI based off the same offense, just using an underlying enhancing factor I believe was a driving license revoked. Based upon that, the court says there is only one offense of DUI. And all the state did in that circumstance, after blowing its speedy trial on misdemeanors, was merely charge the same offense. I believe their language was actually charge the new way of charging the same offense that it was charged in the misdemeanor. So in that circumstance, Your Honor, the court says compulsory joinder analysis, as indicated in people v. Jackson, absolutely doesn't even have to, don't even have to get into that analysis. Counsel, do you agree with Justice Hudson that this was a question of law? Yes, Judge. Does that then mean that you are admitting or conceding that there are no material issues of fact and the facts are uncontroverted? Essentially, Your Honor, yes. Okay. What material facts do you believe are uncontroverted or what uncontroverted facts do you think are material? Your Honor, the material facts in this circumstance are that, first and foremost, in regards to the A2 charge, the speedy trial term is, the state is well within its right in the speedy trial term right now. The state has not blown any speedy trial term in regards to. So that's a fact and not a conclusion of law? That is a fact. Okay. Moreover, Your Honor, and again, in light of Fix and Winterman, especially in light of the Wintersville argument, again, a question of law in this case is that the subsequent A1 charge, again, is not a new and additional offense. So it's your position that compulsory joiner can never apply in DUI cases? Your Honor, in terms of the Van Schoik ruling, yes, compulsory joiner is not something that would apply because exactly what the court said in Van Schoik is that there is only one charge of DUI. And in light of there being only one charge of DUI, Your Honor, it's merely just a new way of charging a DUI, specifically in this circumstance. So you could have a DUI alcohol and then a subsequent DUI drugs, totally separate, maybe based on a blood test or something, and that would be the same DUI charge. One is just straight alcohol, A2, and one is a 4, A5, whatever the DUI drug, straight drug is. Your Honor, for the purposes of Van Schoik, I can't speculate as to how far they would take it. Van Schoik was A1, A1, correct? A2 and A1 is the misdemeanor, and that's a felony just in A1. Right. So there was an A1 charge as a misdemeanor and an A1 charge as a felony. That is correct, Your Honor. Okay. So here we have an A2 and an A1. There's a difference. An A2 charge first and an A1 charge later. Yes, sir. I would say that in Van Schoik, Your Honor, that would seemingly indicate what the court is saying. I should say that the court doesn't indicate anything contrary to that. I can't speculate, though, how it would relate to a DUI drug along with a DUI alcohol. Well, don't the cases, specifically FIPS, don't they talk about you're supposed to look at the charging documents, not the underlying circumstances, not the discovery, but the charging documents themselves? That is true, Your Honor. So here we have a charging document that says DUI impairment alcohol. And then a later charging document that says DUI, A1, just blood alcohol concentration. How are those two not different? Well, Judge, first off, assuming that compulsion to injure applies in this case, they're not different, Your Honor, in a sense because, as FIPS and Woodrum says, it's not the exact same elements we're looking for. It's the essential elements. And looking at the A1 charge, Your Honor, the evidence is exactly the same. I know, but we're getting away from the charging document. Now, my question to you was, didn't FIPS say you look at the charging document? And that is true. Now you're talking about the evidence and the discovery. I'm not talking about the evidence and the discovery because I know you're saying that there was a blood alcohol that could have come in in the A2. I understand that. But if we're looking specifically at the charging document and only the charging document, again, how are they not different? Not with the discovery. Well, Judge, yes, the charges, the elements in and of themselves in the charging document are slightly different. But, again, that's not the entirety of the analysis that FIPS and Woodrum goes into, let alone Williams. The entirety of the analysis, first off, is you need to look at the class of the offense, which is the same class of the offense here, both class A misdemeanors. The mandatory and minimum penalties, which are, again, exactly the same. And you are correct. The elements in this case do slightly differ. However, again, Your Honor, they are essentially the same. And it should be noted that although the complaints elements are slightly different, the IPI in this case also has to be taken into account in regards to the state still, regardless of whether or not this A1 charge is added, the state still has the obligation of proving beyond a reasonable doubt the defendant had a blood alcohol level of .08 or greater in order for the finder of fact or the jury to even take that permissive presumption, that the defendant was, in fact, under the influence of alcohol. And that begs the question, can we agree on one thing, that the state not prove impairment to prove a violation of the BAC and vice versa? Yes, that is correct. They're not exclusive. So why are they not different then? If there's different elements, why are they not different? Well, Your Honor, I would say, again, the FIPS and Woodrum cases, again, don't indicate that these charges need to be exactly the same. Instead, it's just essentially the same. Well, the FIPS says the focus is on whether the original charging instrument gives the defendant sufficient notice of the subsequent charge to prepare adequately for trial on their charge. So if you're talking about impairment and you're talking about BAC, the focus is obviously different because the elements are different. Your Honor, I wouldn't quite say that because, again, in order to prepare for the notice of the DUI originally and the DUI impairment count, again, it's significant that the defendant had a blood alcohol level 0.08 or greater, and that is a significant part of that charge. Well, let's go back. What if the only charge was impairment? Yes. And then all of a sudden at the 11th hour you get this BAC violation? Are you telling me that the defense for preparation isn't going to be any different? In regards to, well, Your Honor, that's not the circumstance here. No, but I'm saying if we take your logic out to its farthest extension, then your rule would seem to say that it doesn't matter if the elements are different. All DUI charges are the same. Drugs, BAC, there's no difference according to you. Well, it's not according to me. According to Van Schoyk, I would say. No, it's not according to Van Schoyk. The offense was exactly the same. There was no different elements in Van Schoyk. It was the same charge, charges of misdemeanor and then charges of felony. That's not what you have here.  I would say it's the totality of those factors that the State previously mentioned. Again, I agree that the elements are slightly different. However, again, the same elements. Well, that's the troubling part. Tell us why as a matter of, you know, your legal argument you should just ignore the different elements. It doesn't make any difference legally. Because, again, Your Honor, and I understand that the rule in Phipps and Woodrum talks about the charging document. But, again, the rule in Phipps and Woodrum also talks about the essential elements. And, again, not the exact same elements. And in light of the fact that we have the same facts here, the same evidence all coming in. Does your argument apply to every offense then? I mean, if you're talking about, let's say, aggravated battery, great bodily harm is charged, and then the State adds a public way aggravated battery or aggravated criminal sexual abuse with different types of touching. I mean, does this extend basically if we call it something, we call it DUI, we call it aggravated sex abuse, we call it aggravated battery, and then we add another aggravated battery or the same name charge, then basically it's the same charge, right? Your Honor, I guess, I understand what you're trying to get at. But, again, it would just, it would vary. I can't speculate as to whether it would vary on what is the new charge. The aggravated battery, are we talking about offense with the same class, the same minimum and maximum penalties, with the same evidence coming in? And in addition to that, really, the entirely evidence coming in is the exact same, then I would agree with you. I would say yes, that would apply. However, it's going to differ based upon the charges and the initial charges and obviously the subsequent charges that the State is attempting to add. And I guess moving on, Your Honor, this whole rule about this subsequent charge being a new and additional charge only applies if compulsory jointer applies. Right, that's the threshold question. And that is the threshold question. And frankly, Your Honor, the case of People v. Jackson is unequivocally clear. There's a bright-line rule for determining whether compulsory jointer applies, and that is looking at who initiated the commencement of this prosecution. Was it the proper prosecutorial authority, the State's attorney, or was it the police? In this circumstance, Your Honor, the police, the DuPage County Sheriff's Office, initiated a DUI, and it was the State's attorney attempting to add this subsequent AU on the count. And following Jackson, that is the beginning and end of our inquiry. Does compulsory jointer apply to misdemeanor cases? Yes, Judge. Okay. And, I mean, I'm sure you're aware that probably anywhere from 95% to 98% of the misdemeanor cases are begun by the police, either by way of a traffic ticket or by way of a complaint filled out by the police where there's no prosecutorial involvement whatsoever until the case gets to court. That is correct, Judge. So basically 95% to 98% of misdemeanors, compulsory jointer would not apply. That's correct. Okay. And that actually comes from Van Schoyck. The Supreme Court did it in itself. And it should be noted that with the majority of the dissent in Van Schoyck, the comment right there is that Jackson applies, and Jackson is still the law. In fact, I'd point to, I know, defense's brief argues that Jackson is not the law. The majority opinion in Van Schoyck indicates in footnote 3 that the analysis in Jackson is still the law. And that is the common thread with the majority and the dissent. And in a sense, the majority rules the way it does in that it sees kind of a loophole that Jackson creates in that circumstance where the state was able to blow a speedy trial term on a misdemeanor and then was able to refile the exact same charge as a felony. And that's why Van Schoyck, the court has to get around Jackson's reasoning by saying that Jackson doesn't even apply. In contrast, the dissent is very informative because the dissent says, no, no, no, the beginning and end of the inquiry is who initiated the charges. And therefore, since in Van Schoyck police initiated the charges and not the state attorney's office, compulsory jointer, in their opinion, would not have applied, and therefore the state should have been able to bring that felony charge and gotten a separate speedy trial term. Now, again, that is the dissent, but the dissent is very informative as to how Jackson applies to this case. Well, what do you make of the Kosenko case out of the third district? Kosenko straight follows Jackson in that, again, the majority opinion in that case was that the beginning and end of the inquiry is who brought the charges. And Kosenko follows Jackson. It follows the dissent in Van Schoyck in the application of Jackson. So then your interpretation of the statute would have to be that the legislature, when they enacted the statute, never intended that the statute would apply, compulsory jointer statute would apply to the vast majority of misdemeanor cases. That has to be your position, right? Yes, Judge. And I would say that they didn't contemplate police being able to bring charges as they are now in terms of being able to bring certain misdemeanors. And that is actually the language directly from Jackson, that the unified court code didn't contemplate that fact. So that is the law, and Jackson is binding. It's still good to bind. In light of Jackson, compulsory jointer would not apply to that A-1 charge. Getting back to Justice McClaren's questions about facts, isn't it true that the fact in this case is that the state would have been aware on the very first court date that there was a blood alcohol concentration result? Your Honor, I would agree that the state would be aware that there was an A-2 charge by the DuPage County Sheriff's Office. I would say that it's not necessarily true that the state would have been aware there was even a blood result at that point. Well, this one report had a blood alcohol result out of it. And that is true, Your Honor, but there are other circumstances that go into the blood alcohol result, specifically, as I'm sure the court knows, that there's a conversion factor. Frankly, again, the state, when they're looking at charges to file, has to have a reasonable certainty that the charges would result in a conviction. And frankly, Your Honor, without having the actual evidence, it's somewhat difficult for the state to actually Did I miss something, or did the police officer actually extrapolate the level of bloodstorm and the PAC? Your Honor, I'm not I thought it was something like 15 or 18, and he reduced it down to 13 or something like that. Yes, Your Honor, and I do believe you are correct. So, I was under the impression that he did, in fact, indicate what the blood level was for purposes of interpreting within the statute parameters. And that is correct, Your Honor. But I would also point you, and that somewhat leads to the other compulsory to enter argument here, is that the state didn't have sufficient knowledge of this blood draw at the time of the commencement of the prosecution. And specifically, Your Honor, the state didn't even have the blood draw. And for all intents and purposes, the state didn't even have any admissible evidence in regards to this blood draw that it could have supported the A1 charge. But then it didn't file the charge until, like, 190 days after it received the actual results. And I agree, Your Honor. It couldn't have been done quicker, of course. However, in regards to the analysis of compulsory to enter, in regards to that, I think when we're talking about due diligence by the state, it really comes down to, again, that same delusional argument. How did it prejudice the defendant? Well, the defense was still able to attempt to quash the subpoena in this case. The defense was still able to question the officer as to the independentness of the hospital draw. There was absolutely no negative effect on the defendant in regards to when the state added this charge. And in light of that, Your Honor, I would say that really the due diligence by the state was perfectly fine. I think ultimately the state's obliged to follow, to be fair. And in this case, I don't think it could be said that the state was unfair in regards to the time it sought to add the charge. So based upon that, Your Honor, and going back to just the compulsory to enter argument, again here, we can't even get to the Williams rule type argument. We don't even get to the Phipps and Woodrow type argument here. You can go over there. Do you have a question? Yeah. I want to ask you a final question on your interpretation of people versus Jackson, which you're heavily relying on. How were the offenses charged in people versus Jackson? Weren't they charged by uniform traffic citation? And they were, Judge. And frankly, I should apologize for it right now. The state did misstate in its brief that this case the charges were initiated by uniform traffic citation, and I apologize. However, that is a- They were not in this case. The OI was a verified complaint. It was a verified complaint. However, Your Honor, I should note that that is a fact that doesn't matter in regards to talking about the Jackson analysis. It's a distinction without a difference, if you'll excuse me. Exactly. Thank you. It's much better put. In regards to that, Your Honor, and again, the dissent in Banshoik clearly says that. And moreover, Your Honor, just practically speaking, when we look at the difference between a uniform traffic citation and complaint and a verified complaint, it's almost the exact same thing. Really, it's a fill-in-the-blank form that the officers fill out. And moreover, Your Honor, in Banshoik, the court interchangeably uses the terms in the majority opinion. They refer to the initial tickets as uniform traffic citations, and then later on they just call them complaints. So the court in Banshoik clearly indicates that the filing, the initiation of charges, it doesn't matter how the charges are filed. It matters who filed the charges. And the fact that the prosecutorial agency, the state, the proper prosecutorial agency, the state attorney's office, was not the party that initiated the charges, that is the beginning and end of the inquiry for compulsory joinery. Thank you, Mr. Minster. You have time for a rebuttal. I have one minor question. In college, we all experience anecdotal life experiences. And one of them was I learned a cliché, which is it's the same, only different. And it seems to me that that's the essence of your argument. Would you agree to that or not? Yes, Your Honor. It is the same but slightly different. However, in regards to the analysis being proposed to the courts here today, that doesn't necessitate a finding that this is a new and additional charge, nor does it necessitate a finding that the state has blown its speedy trial time. Thank you. Thank you. Mr. Minster, you will have time for a rebuttal argument. Mr. Renzel, you may proceed.  May it please the Court. As the state's office admits, they call this a question of law. That means that they're not contesting the fact that the findings of fact in the trial court were that the state knew of the BAC level at the beginning of the prosecution and that the defendant was prejudiced and surprised by the eve of trial filing. They're not contesting that. They're asking you to accept that as true and now, as a matter of law, find that somehow compulsory joinder doesn't apply. I might point out first off that we start with the premise that the speedy trial statute is to be liberally construed in favor of protecting the defendant, that it's liberally construed to apply. And the Williams rule is a pronouncement along those lines, and the Williams rule does apply in this case. The state has sought to create an exception or plug this into an exception that was first discussed in People v. Jackson, which I might point out was overruled or abrogated, where in Jackson the Supreme Court created an exception for uniformed traffic tickets. Was it overruled on other grounds? Yes, it was overruled on other grounds. And then it's been cited for that proposition after that in Van Schoyk and some other cases. Other courts can always cite their own opinions. I wouldn't cite it. I don't think I could. And I read the case again last night and said if we erase the entire application of the Blockberger test or whatever was applied there, would that opinion be able to stand on its own after wiping out the virtual entirety of the premise of the case? I don't think it does. And so in my brief I did suggest that the part about the uniformed traffic ticket or citation was over the dictum because they were applying an elements analysis that isn't necessarily the correct or the present interpretation of whether charges are the same or not instead of using a conduct-based approach, but not to get off on that too much. Let's say maybe we get sidetracked a little bit. Your opponent is relying heavily on Jackson. Tell us why Jackson doesn't control him. Step one, even if you accept that Jackson still has value, this is not a uniformed traffic ticket case. I attached the complaint to my brief to establish that it's not. It's a verified complaint. So the exception that was created in Jackson would have to be enlarged to now swallow the remaining methods of charging a misdemeanor, which would be by complaint normally. And with rare exception, there's information. I don't have statistics, but if the court were to suggest that two to five percent of misdemeanors are charged by information, I wouldn't disagree, at least experientially speaking. Counsel argues that the reason for that rule applies to a complaint filled out by a police officer. I understand that the police are recognized not to be lawyers and that their art of drafting is somewhat equal to that of a layperson. However, this is not a uniformed traffic ticket. The exception to that drafting doesn't apply. 111-3, I don't think, applies with the exception when they charge by complaint. And if you just look at this complaint, it's quite specific. It's got the correct statutory citation to 11-501A2. It's got the correct language in it. It's verified. It's notarized. It's sworn to. It contains all of the complainant witness. Could I hypothecate a little bit here? The information is filed by the state, correct? Yes. The state's attorney? Right. And if this were filed under an information, if Judge Russo had found that the state didn't know about it, what would that have done to your situation? If it were true that the state did not know about it, then the case of Ursary would be applicable. Ursary, same thing. When they added a charge after the defendant confessed to his jail cellmate, clearly they didn't know they could charge that person with murder before that occurred. If they had that scenario, they didn't know that the defendant had a blood test in the hospital or secretly went to the hospital and had a blood test, they were unaware of it, that would be a factual distinction that has value. I certainly can't disagree with that concept. But factually here, our record is unimpeachable. The state knew. But do they have to know at a certain microsecond of time for this case to stand affirmed? No, because we can say they knew more than 160 days before the speedy ran. They knew that there was a BAC. Even if they just want to argue they can't legally know until they actually see the hospital record, more than 160 days passed after that. How is the state prejudiced by the trial court's ruling? How are they prejudiced? Well, now they have to prove impairment and all the impairment. They're not going to be able to prove that simply because a hospital result of a serum test, which has its own criticisms. The defendant can't be found guilty solely based on the hospital result unless they buttonhole it into a presumptive impairment. So it's the presumption that makes the difference? They have to prove impairment in the charge that's presently standing. The one that was dismissed, there's a presumption that they can establish a blood level. The one that was dismissed, the per se, they don't have to prove impairment at all. They just put the number in. And assuming that someone believes it to be valid and accurate and legally appropriate, they would be able to obtain a conviction. And the trier of fact, following the law, must find someone guilty if they establish that the person was 0.08 or more at the time of operating the vehicle. But if they only have impairment, even if they put the blood alcohol test in, the trier of fact is free to ignore or reject that even if it's legally satisfactory and still find the defendant not guilty. That's why, in a hypothetical sense, a defense attorney can be ready for trial on an impairment case even though there's a blood alcohol level, whereas they may not be ready for trial if they're forced to have to deal with a per se charge filed on the eve of trial. Well, your preparation's going to be different. It's not going to be the same. I agree it's not going to be the same. And it wouldn't have been the same in this case. I'm not going to reveal my work product because this case is going back no matter what the ruling is. But I can tell you in a hypothetical sense that on the per se charge, it's all about the validity of the blood alcohol result. On the impairment charge, I would be free or another lawyer would be free to argue that you can ignore that in the face of other evidence. It might be a slight difference, but lawyers have won more important cases on more slight differences. But they are not the same. And as Judge Russo acknowledged, filing that charge on Friday for a trial on Monday would leave a defense attorney with the Hobson's choice of finding a toxicologist perhaps or changing his strategy or anything like that. And I might point out that not only did the state file that charge on the eve, but although they want to argue that it's the same here, they added a new witness to their discovery that same day and they filed a motion to eliminate asking for the court to apply the 1.18 conversion ratio. So they knew they were different. They were different not just in semantics, but they were different in the type of witnesses they wanted to call and the type of application of the law they wanted to have applied within the motion eliminating they themselves filed. So they can stand here and say they're not different all day long. But in practice, they did add witnesses and filed different motions. The cases that talk about this Hobson's choice talk about it when the state comes in and files a greater charge at the 11th hour. Why is this the same? Why is this like a greater charge? It's hard for me to answer. It's not a greater charge, but it's a substantively different charge.  It's a substantively different charge. As I said, one involves more science and the defendant's impairment is no longer relevant. As your honor is aware, just the Zilch case and the Caruso case and the Foley case. There are oftentimes split verdicts. You need to be able to defend against both. I don't believe it would be difficult for the court to find that a defense attorney could argue the impairment charge because this was a car accident. I mean, there's no field sobriety test. The officer evidently didn't even run across the defendant until he's laying in a hospital bed. The state was just going to rely virtually solely on the result for the presumptive impairment, I guess. What is your response to opponents reading the objection that would essentially require us to hold that Compulsory Adjournment could almost never apply to misdemeanor cases? What's your reaction to that position? Other than my inappropriate giggle just a minute ago, that would eviscerate the entire mandatory joinder statute. It would suggest that the defendant could be held at trial on an impairment charge. After that case was done, the state could refile a BAC charge. Maybe after that was done, they could see if there was a cannabis in the blood charge. And maybe they could even split all of the drugs into different categories, and they could just keep charging over and over again. What would be the limitation on that? Well, they have 18 months, and they'd have an exception as long as the same conduct was pending at all times. There would be as many as the subsections. Yes. And perhaps even with the drug charge, if there was a poly-drug scenario, who knows where that would be split. That's the point. They were certainly on notice here. This is not a difficult scenario. Everyone that's in here knows there's a substantive difference between a per se and an impairment charge. When they were given a speedy trial, hello, they have 160 days to figure it out. This is not a small office in an urban, rural setting. They weren't taken by surprise in any respect themselves. But again, Jackson, assuming it applies and it being a Supreme Court case, you're saying there's nothing in Jackson that would lead us to that conclusion. The Supreme Court intended it never to apply to misdemeanor cases, right? The Supreme Court was very specific in Jackson that they carved an exception to the general rule when the initiating charge was by way of a uniform traffic ticket. Which doesn't even apply here under Europe. Right. So in theory, the state's asking that you enlarge that exception, and I would submit if you find Jackson to be... Still applicable? Distinguishable? Yes. Either way, you'll have to say, well, that's up to Illinois Supreme Court to decide if they want to enlarge their own exception. Because they're quite specific about it in their opinion. You've argued that the state knew, again, about 190 days before they filed this charge, at least the latest, I guess it would be, in November when it received the subpoenaed materials. The compulsory joinder statute, isn't that specific, though, that says that the prosecuting authority knew at the commencement of the proceedings? I mean, either it applies or it doesn't apply. I mean, the argument is that if they don't know at the commencement of the proceedings, but then they find out sometime later, the statute simply does not apply. It does say at the commencement of the proceedings. I agree with you there. I'm not arguing that that's the last time it's clear in November when they received the hospital records. That's the last time in the public it's clear they know the result. But in this case, the officer's police report stated the result at the hospital. He, the officer, learned the result before he even arrested the defendant and charged the defendant by way of verified complaint with the impairment charge. So the officer knew, clearly, at the time he initiated the initial arrest. This isn't even minutes before. There's actual evidence that the officer knew of the result even before the A1. So this is unique to that one. Did the police report and or the sworn report indicate that the BAC, I think it was a .15 or something, that that was a serial report? The sworn report just says .159 BAC. And I would point out, just so Your Honor is aware, the verification for the complaint on the bottom says distribution, circuit court, police department, state's attorney slash prosecutor, defendant. So this complaint was definitely sent out to the state. I don't know if the commencement is a microsecond or whether it's the first court date. Again, just applying liberal construction to protect the defendant's speedy trial rights. I would suggest that one could argue the commencement of the prosecution would be the arraignment date. But that's just me. Well, that would be the prosecutor's first involvement in the case if the prosecutor didn't write the charging document, correct? Yes. I think the critical moment in that analysis here is that the verified complaint here, the prosecutor's actively involved in the prosecution. There's no doubt in our case if you wanted to use just a real-world analysis, the one moment that changes it is active involvement by a prosecutor as opposed to you show up in traffic court with a stack of tickets. And the prosecutor's involvement is fleeting. And I think that's maybe the critical difference between the two types of charging documents as Jackson probably spoke to it. Thank you, Mr. Argyle. Mr. Minzer, you may proceed with rebuttal argument. Thank you. Just briefly, Your Honor. Counsel brings up the involvement of the prosecutors is somehow different with a stack of traffic tickets as opposed to a DUI. It's the exact same thing. The State's Attorney's Office is getting these tickets at the same time it would as a DUI on the first court date. And that's why this distinguishing of a uniform traffic citation as opposed to a verified complaint is of no matter.  When we're looking at this analysis of Jackson, again, Jackson has been affirmed. The ruling on compulsory joinder has been affirmed by Van Schoik. Specifically, again, footnote three in the majority opinion says Jackson's analysis of compulsory joinder relevant to the present opinion remains good law. Van Schoik, the Supreme Court has affirmed. And, again, that is the common thread of Van Schoik is that with the majority and the dissent, Jackson is still good law. And when you use the analysis of Jackson, it begins and ends not with the form but with the who. Who filed the initial offense? And in this case, it was the Sheriff's Office. And, again, although it may seem as though most misdemeanor cases are initiated by police, that's what Jackson relies upon in its reasoning that the unified court code did not, or I should say compulsory joinder, didn't contemplate the fact that other law enforcement authorities could commence these prosecutions and not the state's attorney. Because the state's attorney, in light of that statute, is the one proper prosecutorial authority. And in this case, it's the state's attorney's office did not initiate the prosecution. Therefore, compulsory joinder doesn't apply in light of Jackson. And, specifically, moreover, Your Honors, that's why Van Schoik comes about. Because the court sees this fact pattern where the state can file the subsequent felony off the same facts where it blew the speedy trial on a misdemeanor and says, okay, we're not going to apply it to you because all DUIs are created the same. What did Jackson, when did the state learn of the additional charge? Actually, in Jackson, I believe it had been even after the defendant had pled guilty, as I recall, to the initial charge. So even in Jackson, again, it was the primary focus of the court's ruling was who filed the initial charges. In fact, it wasn't the state's attorney's office. That was what turned it in. Because Jackson, if you pled guilty and the state wanted to file additional charges, then you really weren't talking about joinders so much as you're talking about former jeopardy, aren't you? I believe that is true, Your Honor. And that's why Jackson was overturned by Stephan. And it was specifically overturned by Stephan on that double jeopardy grounds. But, again, as indicated by Van Schoik, the compulsory joinder analysis of Jackson is still good law. Moreover, Your Honor, in regards to this finding of fact of surprise and prejudice, this is de novo review. That is clear. FIPS, Woodrum, Williams in and of itself. The fact that the trial court found the defense was surprised and prejudiced, frankly, every defense attorney is going to claim surprise and prejudice when the state's attorney is adding an additional charge. I can't imagine they wouldn't. That's why the court uses this de novo review looking at the factors as stated in FIPS and Woodrum and in Jackson. Just lastly, Your Honor, counsel mentioned his argument would change in regards to this A1 charge in regards to the defense. However, Your Honor, again, it really isn't. The argument is going to be the same. Either way, counsel is going to have to somehow bring doubt into the minds of the jury as to the blood draw. Why? Because, Your Honor, in regards to the blood draw, again, for the permissive presumption, the state still has to prove beyond a reasonable doubt. But it's a presumption. It's a presumption. And if the defense can say, you know, ladies and gentlemen of the jury, you may believe this result, you may disbelieve this result. But look at the tape. Look at the video. Look at the testimony. My client did nothing wrong on the walk and turn, nothing wrong on the, you know, fingernails. Whatever the evidence is, they can point to a lack of impairment. My client was stopped for speeding, wasn't driving around in the lane. You know, I mean, you can win that case as a defense attorney and say that maybe that blood alcohol result is fine. But you still think it's only a presumption and my client was not impaired. Your Honor, again, the same argument can be made for the blood draw in and of itself. Look at the evidence in this case. Wait, wait, no. If you're on the A-1 charge and you say, ladies and gentlemen of the jury, you may believe that that's correct, you lose. True. In regards to that, the defense can't concede that the defendant had a blood alcohol level 0.08 or greater and allow the jury to argue that he's not guilty. But he can argue the same, in a sense, the same argument in that look at the evidence. He passes his feels. There is no bad driving, including this blood draw. That indicates his blood alcohol level is incorrect because someone with that blood alcohol level would be under the influence and they would display these sort of things. It's essentially the same argument, although I agree they can't concede that he had a blood alcohol level 0.08 or greater. The argument is still substantively the same. Look at these facts. It doesn't show that I'm impaired. And, Your Honor, with that in mind, we ask that you just preserve, you reverse the ruling of the trial court and allow the state to add the additional A-1 charge. Thank you. Thank you, counsel. We'd like to thank both attorneys for their arguments today. The case will be taken under revised. I hope you'll take a short recess.